FRED RORABACK *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF EAST HADDAM ET AL.
(11914)

DUPONT, C. J., LAVERY and FREEDMAN, Js.

410

Argued June 10—decision released August 10, 1993

*W. Wilson Keithline,* for the appellant (defendant Dolores P. Dworak).

*Frederick W. Odell,* for the appellee (plaintiff).

*Mark K. Branse,* for the named defendant.

FREEDMAN, J. The defendant Dolores P. Dworak appeals from the decision of the trial court sustaining the appeal of the plaintiff and reversing a decision of the defendant East Haddam planning and zoning commission (commission) which approved her application for site plan review. Dworak claims that the trial court improperly concluded that her application failed to meet the requirements of the applicable zoning regulations. We agree and reverse the judgment of the trial court.

Dworak applied to the East Haddam planning and zoning commission for site plan approval to build a single-family house on a nonconforming parcel of land in East Haddam. After several public hearings and consideration of numerous exhibits, the commission approved the application with stipulations not relevant to this appeal. The plaintiff, who owns land that abuts the subject property, appealed from the commission's decision to the Superior Court. The trial court sustained

the appeal, concluding that the commission improperly approved the application because Dworak (1) failed to submit either a variance or a finding from the zoning enforcement officer regarding her nonconforming lot, as required by § 14A.4.B of the East Haddam zoning regulations,[1] and (2) failed to submit a written report of the town sanitarian, as required by § 14A.2.B.2 of the zoning regulations.[2] After we granted Dworak's petition for certification to appeal, this appeal followed.

---

[1] Section 14A.4.B of the East Haddam zoning regulations provides: "The application shall conform in all respects with these Regulations, unless a certified copy of a variance from any such provision is submitted with the application, or *the Zoning Enforcement Officer has issued a finding that the nonconformance is a legal, pre-existing nonconformity* in accordance with Section 8 of these Regulations. Further, the application shall conform to the East Haddam Subdivision Regulations; the East Haddam Inland Wetlands and Watercourses Regulations, as evidenced by the submission of an Inland Wetlands Permit issued by the East Haddam Inland Wetlands and Watercourses Commission; the Public Health Code, as evidenced by a report of the Health Director [or] his authorized designee; and all relevant provisions of the Connecticut General Statutes, whether or not cited in these Regulations." (Emphasis added.)

[2] Section 14A.2.B.2 of the East Haddam zoning regulations provides: "If any existing soils in the immediate area of the site designated for sanitary waste disposal are classified as having 'severe' limitations for on-site sewerage treatment (as set forth in Section 4.3 (1) (a) the East Haddam Subdivision Regulations), in accordance with the current soils map of the U.S. Department of Agriculture, Soil Conservation Service, then a subsurface sewerage disposal plan shall be presented to the Commission. Said plan shall specifically address the methods utilized to overcome the limitations identified in the soils of the site; shall be prepared by a licensed Connecticut Professional Engineer, and *shall be accompanied by a written report of the Town Sanitarian or his representative certifying that the plan will resolve the limitations of the soils, and will pose no significant risk to the public health or safety.* All sanitary waste disposal systems to be located in the immediate area of soils with 'severe' limitations, as set forth above, shall have 100% replacement leaching fields at least equal in size to the original leaching fields, and the location of both the original and replacement leaching fields shall be designated on the site plan. Both the original and replacement fields shall be located so as to contain the percolation and deep test pits." (Emphasis added.)

"In ruling upon a site plan application, the planning commission acts in its ministerial capacity, rather than its quasi-judicial or legislative capacity. It is given no independent discretion beyond determining whether the plan complies with the applicable regulations. *Kosinski* v. *Lawlor,* [177 Conn. 420, 426–27, 418 A.2d 66 (1979)]. The board is under a mandate to apply the requirements of the regulations as written. 'If the plan submitted conforms to these regulations, the council has no discretion or choice but to approve it.' *RK Development Corporation* v. *Norwalk,* 156 Conn. 369, 375–76, 242 A.2d 781 (1968); *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 674–75, 236 A.2d 917 (1967)." *Allied Plywood, Inc.* v. *Planning & Zoning Commission,* 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984). While a commission "has limited discretion when acting in an administrative capacity . . . it does have discretion to resolve debatable questions of fact, and on appeal the issue is whether the agency's decision on factual questions is reasonably supported by the record, in which case the court should not substitute its judgment for that of the commission." R. Fuller, Land Use Law and Practice § 33.3, p. 568; *Westport* v. *Norwalk,* 167 Conn. 151, 161, 355 A.2d 25 (1974). We now turn to an examination of the trial court's conclusion that Dworak's site plan application failed to conform to the East Haddam zoning regulations in two respects.[3]

---

[3] Because we conclude that the trial court improperly concluded that Dworak's site plan application failed to conform to the East Haddam zoning regulations, we need not consider Dworak's third claim on appeal, namely, that "[i]t is not illegal, arbitrary, or an abuse of the Commission's discretion for the Planning and Zoning Commission to overlook a procedural irregularity that was not raised as an issue during the hearings provided the Commission acts in reasonable compliance with the substance and spirit of the Regulations and in so doing does not prejudice any party."

## I

The trial court first concluded that Dworak's site plan application did not contain the necessary documentation required for a nonconforming lot. It is undisputed that, due to its small size, the Dworak property is a nonconforming lot. Section 8.1.2 of the East Haddam zoning regulations provides in pertinent part that "[t]he construction of a permitted building or structure . . . on a non-conforming lot or parcel may be allowed by the Commission, following Site Plan Approval in accordance with Section 14A of these regulations . . . ." With respect to any nonconformity, § 14A.4.B requires that "the Zoning Enforcement Officer [issue] a finding that the nonconformance is a legal, pre-existing nonconformity in accordance with Section 8 of these Regulations."

## A

Dworak first posits, in her brief, that "[t]he requirement in Section 14A.4.B for a variance or a finding of pre-existing nonconformity makes sense *except* in the case of a Section 8.1.2 application, where the *sole* basis of the application is that the subject lot is nonconforming." (Emphasis in original.) Dworak therefore argues that because § 8 expressly permits construction on a nonconforming lot, the provisions of § 14A regarding nonconformity with the zoning regulations do not apply to her site plan application. We disagree.

A zoning regulation "must be interpreted in light of our ordinary rule that '[w]here the language of the statute is clear and unambiguous, the courts cannot, by construction, read into statutes provisions which are not clearly stated.' *Point O' Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 366, 423 A.2d 90 (1979). 'A zoning ordinance is a local legislative enactment, and in its interpretation the question is the inten-

tion of the legislative body as found from the words employed in the ordinance. . . . The words employed are to be interpreted in their natural and usual meaning.' (Citations omitted.) *Lawrence* v. *Zoning Board of Appeals,* 158 Conn. 509, 511, 264 A.2d 552 (1969)." *Harlow* v. *Planning & Zoning Commission,* 194 Conn. 187, 193–94, 479 A.2d 808 (1984); *Weigel* v. *Planning & Zoning Commission,* 160 Conn. 239, 246, 278 A.2d 766 (1971). While § 8.1.2 does permit the construction of a building on a nonconforming lot, it expressly allows such construction *following* site plan approval in accordance with § 14A. The plain and unambiguous language of § 8.1.2, which applies only to nonconforming lots, requires compliance with the provisions of § 14A, which necessarily includes § 14A.4.B. Dworak's interpretation of § 8.1.2 would require us to ignore its reference to § 14A and would require us to read into that regulation an exception that is not clearly stated. This we cannot do. *Point O' Woods Assn., Inc.* v. *Zoning Board of Appeals,* supra, 365–66.

B

Dworak further argues that the trial court improperly concluded that her site plan application did not meet the requirement of § 14A.4.B. We agree.

Several times during the public hearings on Dworak's application, the issue of the nonconforming status of the lot was discussed by witnesses, the zoning enforcement officer and members of the commission. A member of the public questioned whether Dworak could properly claim that her lot was a legal, preexisting nonconformity under the local zoning regulations. The commission then expressed interest in receiving an opinion on the issue from its attorney, Mark K. Branse. At the next hearing on the Dworak application, the zoning enforcement officer read into evidence and submitted a copy of Branse's letter on the subject. That letter con-

cluded that the concerns raised at the prior hearings were unfounded. Additionally, immediately prior to the commission's vote on the application, the zoning enforcement officer informed the commission that Dworak's site plan "meets all the zoning requirements." Under these circumstances, the trial court improperly concluded that the zoning enforcement officer had not "issued a finding that the nonconformance is a legal, pre-existing nonconformity," as required by § 14A.4.B.

## II

The trial court also concluded that the commission's decision was illegal, arbitrary and an abuse of discretion because the commission did not have before it a report from the town sanitarian. Section 14A.2.B.2 of the East Haddam zoning regulations specifies additional requirements for site plans where "the existing soils in the immediate area of the site designated for sanitary waste disposal are classified as having 'severe' limitations for on-site sewerage treatment," as defined elsewhere in the regulations. There is no dispute that this provision applies to Dworak's application for site plan approval. Among the additional subsurface sewerage disposal plan requirements set forth in § 14A.2.B.2 is a requirement that the plan "shall be accompanied by a written report of the Town Sanitarian or his representative certifying that the plan will resolve the limitations of the soils, and will pose no significant risk to the public health or safety."

The regulation in issue requires a report but does not specify the precise form of the written report from the town sanitarian. Here, the town sanitarian indicated his approval of the proposed site plan by writing "this design is approved" on the plan.[4] In addition, the com-

---

[4] This language was read into the record by the zoning enforcement officer at two hearings before the commission. The zoning enforcement officer was apparently reading the sanitarian's written approval from the site

mission had before it a copy of a February 8, 1991 report from Robert W. Scully, a supervising environmental sanitarian in the on-site sewage disposal section of the Connecticut department of health services. The department of health services is the ultimate arbiter of septic system compliance, authorized to review proposed sewerage disposal plans. See generally General Statutes § 19a-36; Regs., Conn. State Agencies § 19-13-B103e. Scully's report was addressed to the town sanitarian and contained a review of the site plan's sewerage disposal plan. In that report, Scully recommended "approval" of the plan and commented that the plan was "very thorough." That report contrasted sharply with Scully's October 9, 1990 report on a prior site plan for the Dworak property, in which Scully recommended denial of the plan and noted several deficiencies in the proposed sewerage disposal plans that needed to be addressed. The prior site plan and Scully's report on that plan were both before the commission when it considered Dworak's second application for site plan approval. Under these circumstances, we conclude that Dworak's site plan application was accompanied by what for all intents and purposes amounted to "a written report of the Town Sanitarian or his representative certifying that the plan will resolve the limitations of the soils, and will pose no significant risk to the public health or safety," as required by § 14A.2.B.2.

plan. The copy of the site plan in the return of the record, however, contains no such inscription by the town sanitarian. Neither party points this out, and the trial court seems to have addressed this claim under the assumption that the sanitarian did write his approval on the site plan. We will therefore address this issue on the theory on which it was tried and decided in the trial court. See *State* v. *Ortiz*, 29 Conn. App. 825, 840 n.8, 618 A.2d 547 (1993); *Feng* v. *Dart Hill Realty, Inc.*, 26 Conn. App. 380, 385, 601 A.2d 547, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992); *Trivalent Realty Co.* v. *Westport*, 2 Conn. App. 213, 215 n.4, 477 A.2d 140, cert. dismissed, 194 Conn. 806, 482 A.2d 712 (1984).

The judgment is reversed and the case is remanded to the trial court with direction to dismiss the plaintiff's appeal.

In this opinion the other judges concurred.

