[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On July 14, 1995, the named plaintiffs, Mary Wood and Thomas Landers, filed a summons, application for a temporary injunction, order to show cause, and verified complaint in six counts. In count one, Wood alleges that she is an "aggrieved property owner" in accordance with General Statutes § 8-8 because she is the owner of property, the boundary of which is within 75 feet of the proposed hospital. Landers similarly alleges that he is "aggrieved" because he is the owner of property, the boundary of which is within 120 feet of the proposed hospital.
The plaintiffs allege that the defendant, Greenwich Hospital Association (Hospital), filed a site plan and special permit application to construct a new hospital building that would be in "close proximity" to the properties of the plaintiffs. The plaintiffs allege that on June 27, 1995, the Commission approved the Hospital's site plan and also adopted amendments to §§ 6-113, 6-205 and 6-158 of the Regulations in order to make the site plan "legally conforming." The plaintiffs allege that the amendments to the Regulations change the maximum height, minimum front yard depth, side yard width, rear yard depth, and maximum floor ratio, and that the amendments do not provide adequate setbacks and limitations on building heights.
The plaintiffs allege that the Commission's approval of the special permit/site plan and the amendments to the Regulations were CT Page 40 published in the Greenwich Time on July 3, 1995. The plaintiffs claim that the new building will "drastically alter" the residential characteristics of the Perryridge Road neighborhood; that the amendments do not provide protection to the residential area from commercial encroachment; and that the new hospital building does not conform with the Town of Greenwich's "Plan of Development," and therefore the amendments are void.
In count two, the plaintiffs further allege that the Commission "has abused its regulatory power and its zoning authority" by adopting the amendments which affect the zoning of a small area of land, for only one beneficiary. In count three, the plaintiffs claim that they are aggrieved because the Commission did not consider the opinion of the Architectural Review Committee of the Town of Greenwich (A.R.C.) that the building site for the new hospital was too small for the proposed structure. In count four, the plaintiffs claim that the planned demolition of the "Benedict Building," a historic building between the existing hospital and, the residential homes on Perryridge Road, will have an undesirable impact on the quality of the neighborhood and the value of the properties. In count five, the plaintiffs further allege that in adopting the amendments to the Regulations, the Commission failed to assess the increase in traffic that will result. Finally, in count six, the plaintiffs did not receive notice of the public hearing at which the application of the Hospital was heard, and the Commission adopted the amendments to the Regulations.
In the plaintiffs' prayer for relief, they seek: a declaration that the amendments to the Regulations are null and void; a reversal of the Commission's decision granting the Hospital's special construction permit; a temporary restraining order pending the adjudication of the plaintiffs' complaint; a permanent restraining order prohibiting the Commission from issuing a permit to demolish the existing hospital and construct the new hospital, money damages, and costs.
The parties agree that notice of the approval by the Commission of the special permit/site plan, and the adoption of the amendments to the Regulations was published in the Greenwich Time
on July 3, 1995. (Complaint, par. 8; Answer of Commission, par. 8; Answer of Hospital, par. 8.) On July 14, 1995, the plaintiffs served process on the Town of Greenwich and Commission by service upon Dorothea Melengaard, Assistant Town Clerk, and the Commission by service upon Peter Joyce, Chairman of the Commission, and the Hospital, by service upon its general counsel, Andrew Schultz. CT Page 41 (Sheriff's Return.) The plaintiffs filed a summons, application for a temporary injunction, an order to show cause and verified complaint on July 14, 1995. The Hospital filed its answer on August 17, 1995, and the Commission filed its answer on September 13, 1995. The return of record was filed on August 2, 1995. Also on August 23, 1995, the plaintiffs filed a "Brief of Plaintiffs/Appellants" and on September 6, 1995, an "Amended Brief of Plaintiffs/Appellants." Finally, on September 6, 1995, the defendants filed their briefs, and on September 19, 1995, the Hospital filed a supplemental brief.
As a preliminary matter, the court must address the issue of whether this action is an administrative appeal. The defendants argue that this action is not an administrative appeal brought pursuant to § 8-8, but is an action brought by the plaintiffs to enjoin the Commission from issuing permits for the construction of the new hospital, and that the plaintiffs should have commenced an appeal of the Commission's decision. Accordingly, the defendants claim that the court lacks subject matter jurisdiction because the plaintiffs have ignored the remedy available to them by appeal and failed to exhaust their administrative remedies.
The substance of the allegations and claims for relief in the plaintiffs' complaint, as described above, as well as evidence and argument presented at the hearing in this matter, is that the Commission acted improperly in adopting the amendments to the Regulations and approving the Hospital's site plan and special permit for the construction of the new hospital. Accordingly, the court must construe this action as an administrative appeal brought pursuant to § 8-8. See e.g., Chartouni v. Exxon Corp., Superior Court, Judicial District of Danbury, Docket No. 318506 (March 28, 1995, Stodolink, J.); Preis v. Court of Common Councilof Hartford, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 386354 (December 6, 1991, Maloney, J.).[1]
The plaintiffs argue that the construction of the new hospital will be destructive to the character of the district and incompatible with the surrounding land use. The plaintiffs claim that the defendants made no investigation into whether the new hospital would "promote general public welfare." The plaintiffs argue that the construction of the new hospital will cause the elimination of the "promote general public welfare." The plaintiffs argue that the construction of the new hospital will cause the elimination of the "buffer zone" between commercial and CT Page 42 residential land use, and that the acceptance by the Commission of the site plan is an example of illegal spot zoning. The plaintiffs further argue that the Commission ignored the findings of the A.R.C., and thereby violated its statutory duty to protect the residential community, and that the Commission erred in providing "excessive assistance" to the Hospital in regard to its proposed site plan. Finally, the plaintiffs argue that the site plan should not have been granted by the Commission until the Hospital submitted a long range plan of development.
JURISDICTION
In order to take advantage of a statutory right to appeal from a decision of a local zoning board, there must be strict compliance with the statutory provisions that create the right. Simko v.Zoning Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202 (1988). These provisions are mandatory and jurisdictional, accordingly, the failure to comply subjects the appeal to dismissal. Id.
Aggrievement
General Statutes § 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court . . . ." "Pleading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal." New EnglandRehabilitation Hospital, Inc. v. CHHC, 226 Conn. 105, 120,627 A.2d 1257 (1993). "The burden of demonstrating aggrievement rests with the plaintiff." Id., 301. The test for establishing aggrievement is well settled: "`First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in he subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specifically and injuriously affected by the decision.'"Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 307, 592 A.2d 953 (1991), quoting Nader v. Altermatt,166 Conn. 43, 51, 592 A.2d 953 (1974).
Furthermore, pursuant to § 8-8(a)(1), "[i]n the case of a decision by a . . . planning commission . . . `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." CT Page 43
Wood alleges in her complaint that she is an "aggrieved property owner" pursuant to § 8-8 because she is the owner of property, the boundary of which is within 75 feet of the proposed hospital. At the hearing on September 19, and 22, 1995, evidence was presented showing that Wood is the owner of the property at 4 Perryridge Road, Greenwich, Connecticut, and that this property is within 100 feet of the proposed hospital. Accordingly, Wood is aggrieved pursuant to § 8-8(a)(1) in that she is the owner of property that is within 100 feet of the land involved in the decision of the Commission.
In the complaint, Landers similarly alleges that he is "aggrieved" because he is the owner of property, the boundary of which is within 120 feet of the proposed hospital. Landers has failed to allege or provide evidence showing that he is statutorily aggrieved pursuant to § 8-8(a)(1) as an owner of property that is within 100 feet of the land involved in the decision of the Commission. Landers has failed to present any evidence showing that he had "a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole," and that this interest "has been specifically and injuriously affected by the decision." See Winchester WoodsAssociates v. Planning Zoning Commission, supra, 219 Conn. 307; see also Pomanzi v. Conservation Commission, 220 Conn. 476, 482,600 A.2d 320 (1991). Accordingly, Landers is not classically aggrieved. Therefore, the appeal is dismissed as to Landers because he has failed to established aggrievement.
Timeliness
General Statutes § 8-28 provides in pertinent part that "[a]ny appeal from an action or decision of a planning commission shall be taken pursuant to the provisions of section 8-8." Section 8-8(b) requires that the "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes." As stated above, notice of the Commission's approval of the special permit/site plan, and adoption of the amendments to the Regulations was published on July 3, 1995, and process was served on all defendants by July 14, 1995. Therefore the plaintiffs' appeal is timely.
Citation and Bond or Recognizance
CT Page 44
The defendants argue that the plaintiffs' action should be dismissed due to lack of subject matter jurisdiction because the plaintiffs have failed to include a proper citation or bond. Specifically, the defendants claim that the plaintiffs' use of Form JD-CV-1 and the failure to direct service upon the chairman or clerk of the Commission require the court to dismiss the plaintiffs' action.
In regard to the use of Form JD-CV-1, the Supreme Court has held that the mistaken use of a form does not warrant the dismissal of an administrative appeal absent the showing of prejudice by the defendant. See McQuillan v. Department of LiquorControl, 216 Conn. 667, 671-73, 583 A.2d 633 (1990). A form sufficiently satisfies the need to give notice to the defendant of the nature of the proceeding, if it clearly informs all concerned parties that an action is being commenced, contains notice of the return date and the requirement of filing an appearance, and directs a competent authority to summon the defendant. Id., 672-73. See also Walker v. Zoning Board ofAppeals, Superior Court, judicial district of Danbury, Docket No. 306282 (January 27, 1995, McGrath J.).
Furthermore, "[s]ubsequent to the enactment of Public Acts 1988, No. 88-79, the Supreme Court held that where a plaintiff, in a zoning appeal, fails to cite the chairman or clerk of commission, but the sheriff nonetheless serves the chairman and the commission is cited as a party, there is no jurisdictional defect. Ilvento v. Frattali, 210 Conn. 432, 555 A.2d 985 (1989). `The legislature, when it enacted Public Acts 1988, No. 88-79, in response to [the] decision in [Simko I and Simko II] clearly expressed its intention that appeals from the decisions of planning and zoning commissions be heard and decided on their merits and not be invalidated for technical defects in service.' Id., 434." Lomazzo v. Zoning Board of Appeals, Superior Court, Judicial District of Fairfield, Docket No. 306397 (January 27, 1994, Levin, J.); see also Spicer v. Zoning Commission,212 Conn. 375, 562 A.2d 21 (1989).
Finally, with regard to the failure to file a proper bond or recognizance, this court has previously recognized that the "failure to provide a proper bond or recognizance does not deprive the court of subject matter jurisdiction." Hughes v. Cityof Stamford, 13 Conn. L. Rptr. 615, 616 (March 24, 1995, Karazin, J.); see also Demar v. Open Space Conservation Commission, CT Page 45211 Conn. 416, 428, 559 A.2d 1103 (1989); Sheehan v. ZoningCommission, 173 Conn. 408, 378 A.2d 519 (1977).
Accordingly, the court should not dismiss the plaintiffs' action on the basis of the procedural defects raised by the defendants.
SCOPE OF JUDICIAL REVIEW
"`In reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal . . . . The burden of proof to demonstrate that a board acted improperly is upon the party seeking to overturn the board's decision . . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is a factual support for the board's decision, not for the contentions of the applicant.'" Francini v. Zoning Board ofAppeals, 228 Conn. 785, 791, 639 A.2d 519 (1994). "The question is not whether the trial court would have reached the same conclusion but whether the record supports the decision reached."Burnham v. Planning Zoning Commission, 189 Conn. 261, 265,455 A.2d 339 (1983).
"`Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations . . . . Under this traditional and long-standing scope of review, the proper focus of a reviewing court is on the decision of the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision." (Citation omitted.) Caserta v. Zoning Board of Appeals,226 Conn. 80, 86-87, 626 A.2d 744 (1993). "An administrative appeal shall be confined to the record." (Internal quotation marks omitted.) Blaker v. Planning Zoning Commission, 219 Conn. 139,146, 592 A.2d 155 (1991). Simply, the court must determine whether the conclusions reached by the agency are supported by the record. Primerica v. Planning Zoning Commission,211 Conn. 85, 96, 558 A.2d 646 (1989).
"[A] local zoning authority, in enacting or amending its regulations, acts in a legislative rather than administrative CT Page 46 capacity . . . . Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change . . . . The discretion of a legislative body, because of its constituted role as a formulator of public policy, is much broader [than] that of an administrative board, which serves a quasi-judicial function . . . . The broad discretion of local zoning authorities acting in their legislative capacity is not, however, unlimited . . . . We have long recognized that any change must be in harmony with and in conformity to a comprehensive plan as mandated by General Statutes § 8-2." (Citations omitted; emphasis in original; internal quotation marks omitted.) Parks v.Planning Zoning Commission, 178 Conn. 657, 660-61, 425 A.2d 100
(1979).
On June 27, 1995, the Commission, after a public hearing, approved site plan #1754 for the construction of the new hospital and the special permit to construct the new hospital building, and the amendments to §§ 6-113, 6-158 and 6-205 of the Regulations, from which the plaintiffs now appeal. (ROR, Items 55, 57, 58, 59, 60 and 61.) As discussed below, the record supports the decisions of the Commission, and therefore, the plaintiffs' appeal is dismissed.
In count one, the plaintiffs allege that the proposed hospital building, and the amendments to the regulations, are incompatible with the Town's "Plan of Development," and therefore, the Commission violated § 6-113(a)(4) of the Regulations. The plaintiffs further argue that the Commission failed to make any investigation as to whether the proposed hospital would promote the general welfare of the community. The plaintiffs further claim, in count four, that the proposed demolition of the historic Benedict Building will destroy the "buffer zone" between the existing hospital buildings and the residential neighborhood on Perryridge Road, and have an adverse impact on the quality and value of the properties in the neighborhood.
"In ruling upon a site plan application, the planning commission acts in its ministerial capacity, rather than its quasi-judicial or legislative capacity. It is given no independent discretion beyond determining whether the plan complies with the applicable regulations . . . . The board is under a mandate to apply the requirements of the regulations as CT Page 47 written . . . . on appeal the issue is whether the agency's decisions on factual questions is reasonably supported by the record, in which case the court should not substitute its judgment for that of the commission." (Citations omitted; internal quotation marks omitted.) Roraback v. Planning ZoningCommission, 32 Conn. App. 409, 412, 628 A.2d 1350 (1993).
Furthermore, when acting upon a special permit, the "commission's function is to determine whether 1) the proposed use of the property is expressly permitted under the zoning regulations; 2) the standards in the relevant zoning regulations are satisfied; and 3) conditions necessary to protect public health, safety, convenience and property values, as required by General Statutes § 8-2, can be established." New TestamentBaptist Church v. East Hartford Planning Zoning Commission, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 527247 (March 21, 1995, Holzberg, J.).
Section 6-15 of the Regulations provides that the Commission "shall take into consideration the public health, safety and general welfare, the comfort and convenience of the general public" and numerous other objectives into account in reviewing a site plan. (ROR, Item 66, pages 16-17.) Similarly, § 6-17 of the Regulations provides the criteria to be considered by the Commission in reviewing a special permit. (ROR, Item 66, page18-19.) Furthermore, § 6-113(a) of the Regulations provides in part that "[t]he intent and purpose of the Hospital Zones are to . . . [e]nsure compatibility of a hospital with surrounding land uses and zoning and the Town's `Plan of Development.'" (ROR, Item 66, page 90.)
The Commission specifically indicated, in its decision, that it "reviewed the site plan against the Town Plan of Development and regulations to see that it was in conformity therewith with particular reference to the requirement of maintenance of the town's predominantly residential character, adequacy of open spaces, screening and buffering in harmony and scale with the adjacent development so as not to materially adversely affect residential uses, nor be detrimental to the neighborhood, and decides that the final plan has successfully done so through substantial changes in the design, siting, layout and planting and screening of the building, particularly with respect to Perryridge Road as indicated by the applicant entering into agreement with the Perryridge Neighborhood Association, Inc. . . . and that the Plan of Development and regulation CT Page 48 requirements that the development be in keeping with the Town character and neighborhood characteristics has been demonstrated by significant review and discussion with the Commission's Architectural Review Committee, which reviewed and approved the final plan by memo dated June 22, 1995." (ROR, Item 60, page 2.) In regard to the Benedict Building, the Commission further found that "the Town Plan of Development and regulations require the preservation of historical and architectural resources which caused the Commission . . . concern over the loss of the Benedict Building, which concern was mollified by the realization that the Benedict building has been significantly altered over the years from its original historical appearance and function and its loss will be ameliorated by the use of architectural elements of the old building in the new and that in this circumstance the Commission's primary concern for the public health and welfare of the Town outweighs retention of the building." (ROR, Item 60, page 2.)
The Commission further found, upon review of the traffic and parking studies, that pedestrian and vehicular traffic would be improved, that screening and planting would protect the surrounding neighborhood, that property setbacks would "lessen the impact of the proposed building on the residential neighborhood to the north and will allow more room for the proposed buffer," and that relocation of the building and garage entrances will lessen the impact on the adjoining neighborhood. (ROR, Item 60, pages 2-3.) The Commission found that the site plan was in conformity with the regulations and the amendments to the regulations. (ROR, Item 60, page 3.) In regard to the amendments to §§ 6-113, 1-158 and 6-205 of the Regulations, the Commission found that the reduction in the floor area ratio and height, and the increase in the front, side and rear setbacks, will permit "increased screening and planting and therefore not materially adversely affect surrounding residential areas," and that the "amendments to the Hospital zones reflect concerns and input of the surrounding neighbors regarding the setbacks, height, scale and mass of the proposed new Hospital Building, and the new regulation changes are in keeping with the Plan of Development objectives and goals to preserve the Town character and the surrounding residential neighborhood." (ROR, Item 61.) These findings by the Commission are supported by the record. (ROR, Items 8, 9, 10, 11, 29, 36, 40, 43, 45, 48, 51, 53 pages 3-6, 9-14, 20-27, 47-51.)
In count two, the plaintiffs allege that the Commission wrongfully amended the Regulations in a manner which benefits only CT Page 49 a small geographical area, to the detriment of the neighboring residential community. Specifically, the plaintiffs argue that this "is an example of illegal spot zoning."
"[S]pot zoning is the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood . . . . Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole." Michel v. Planning ZoningCommission, 28 Conn. App. 314, 319, 610 A.2d 720, cert. denied,223 Conn. 923, 614 A.2d 824 (1992); see also Spring v. New CanaanPlanning Zoning Commission, Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 135583 (November 14, 1994, Karazin, J.).
In the present case, the decisions of the Commission which are at issue do not involve a "zone change," but merely involve amendments to the regulations governing established zones. Furthermore, as already discussed, the record establishes that the amendments are in conformity with the Town's Plan of Development and "provide for the public health, safety and welfare of the Town population." (ROR, Item 61.)
In count three, the plaintiffs allege that the Commission failed to take into account the opinion of the A.R.C. which indicated that the site was to small for the proposed new hospital.
In its decision, the Commission specifically noted that "the Plan of Development and regulation requirements that the development be in keeping with the Town character and neighborhood characteristics has been demonstrated by significant review and discussion with the Commission's Architectural Review Committee, which reviewed and approved the final plan by memo dated June 22, 1995." (ROR, Item 60, page 2.) Furthermore, the record demonstrates that the A.R.C. reviewed the special permit/site plan for the new hospital, including the "size/scale" of the proposed hospital. (ROR, Item 44, page 3.) The A.R.C.'s report indicates that it was "pleased to recommend the design of the new hospital building to the Planning and Zoning Commission on its aesthetic merits and on how the proposed new building relates aesthetically to the streetscape and to the adjacent neighborhoods." (ROR, Item 44, page 2.) CT Page 50
In count five, the plaintiffs allege that the Commission failed to consider the problems of increased traffic and parking in their decisions. However, the record demonstrates that the Commission consider the impact that the new hospital would have on traffic and parking. (ROR, Items 8 and 9.) The Commission considered the "Allan Davis traffic and parking studies and the site provisions for underground, on-site, off-street, new parking facilities of 159 spaces for patients and visitors and improvements in surface parking and the overall demand indicate that the pedestrian and vehicle traffic conditions would be significantly improved on abutting streets with particular reference to Perryridge Road . . . ." (ROR, Item 60, page 2.) Furthermore, the traffic report by Allan Davis concluded that "[i]n all cases the traffic generated by the Hospital as it passes through the nearby intersections will be less than today's Hospital traffic." (ROR, Item 8, page 7.)
In count six, the plaintiffs claim that they did not receive notice of the public hearing at which the applications of the Hospital were heard. The plaintiffs, however, have failed to brief this claim. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by [the] court." State v.Ramsundar, 204 Conn. 4, 16, 526 A.2d 1311, cert. denied, 484 U.S. 955,108 S.Ct. 348 (1987); see also Lathrop v. Planning ZoningCommission, 164 Conn. 215, 224, 319 A.2d 376 (1973). Accordingly, the court need not address this claim as it has not been adequately briefed by the plaintiffs.
Similarly, the plaintiffs argue that the Commission should not have approved the plans for the new hospital because the Hospital did not provide a long range plan of development. The plaintiffs have failed to allege this claim in their complaint and have failed to provide any authority for this contention. Therefore, the court need not address this argument. See State v. Ramsundar, supra,204 Conn. 16.
Finally, the plaintiffs argue in their brief that the Commission provided "excessive assistance" to the Hospital in the preparation of the site plan. The plaintiffs have not included this claim in their complaint, nor have they provided any evidence in support of this contention. Upon review of the record, there is no evidence supporting the plaintiffs' claim of "excessive assistance" by the Commission. CT Page 51
Accordingly, for the reasons discussed above, the court denies the plaintiffs' appeal.
KARAZIN, J.